**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) CV 11-8178-PCT-NVW (MHB) |
| Plaintiff, | ) CR 10-8008-PCT-NVW |
| v. | ) **REPORT AND RECOMMENDATION** |
| Vincent Lee Honahni, | ) |
| Defendant/Movant. | ) |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

On November 14, 2011, Movant Vincent Lee Honahni, who is confined in the Federal Correctional Institution-Marianna in Marianna, Florida, filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV 11-8178 ("CV") Doc. 1; CR 10-8008 ("CR") Doc. 65.)  Plaintiff United States of America (the "Government") filed its sealed Response on March 27, 2012, and Movant filed his reply on April 11, 2012.  (CV Docs. 10, 11.)

## BACKGROUND

Movant raised four grounds for relief in his § 2255 Motion.  In Grounds One through Three, Movant alleged that his sentence is illegal under the Navajo Treaty of 1868, violates the Indian Civil Rights Act of 1968, and violates the Fifth and Fourteenth Amendments of the Constitution.  In Ground Four, Movant claimed that his trial counsel was ineffective in violation of the Sixth Amendment because counsel failed to advise him as to the length of the sentence he could receive and failed to file a direct appeal.

1    The Court subsequently screened the Motion and found that Movant expressly waived
2    the claims alleged in Grounds One, Two, and Three pertaining to sentencing, and summarily
3    dismissed those claims. (CV Doc. 3.) The Court ordered the Government to respond to
4    Ground Four. (CV Doc. 3.)

5    The facts underlying Movant's plea of guilty and sentence are as follows. On July 7,
6    2007, Movant (23 years old at the time) had sexual intercourse with his then 15-year-old
7    cousin. (CV Doc. 10 at 3.) The victim alleged that Movant used force against her in order
8    to engage in sexual intercourse. (CV Doc. 10 at 3.) The victim became pregnant and gave
9    birth to a child. (CV Doc. 10 at 3-4.) DNA analysis showed that Movant was included as
10   a possible father of the child and that 99.99997 percent of the male population was excluded
11   from being the father of the child. (CV Doc. 10 at 4.)

12   On April 28, 2010, Movant was charged by Superseding Indictment as follows –
13   Count 1: Aggravated Sexual Abuse of a Minor, in violation of Title 18 U.S.C. Sections 1153
14   and 2241(a) and (c); Count 2: Sexual Abuse of a Minor, in violation of Title 18 U.S.C.
15   Sections 1153 and 2243(a); Count 3: Sexual Abuse of a Minor, in violation of Title 18 U.S.C.
16   Sections 1153 and 2243(a); and Count 4: Abusive Sexual Contact, in violation of Title 18
17   U.S.C. Sections 1153 and 2244(a)(3). (CR Doc. 22.)

18   On October 18, 2010, Movant pled guilty to Count 2 of the Superseding Indictment.
19   (CR Docs. 41, 59.) The plea agreement set forth a maximum term of 15 years imprisonment.
20   (CR Doc. 59 at 1.) The plea agreement also stated that "the defendant shall be sentenced to
21   a term of no less than three years imprisonment" and that there were "no agreements as to
22   whether sentencing guideline 2A3.1 (cross reference to Criminal Sexual Abuse) will apply."
23   (CR Doc. 59 at 2.) The plea included an agreement to dismiss Counts 1, 3, and 4, (CR Doc.
24   59 at 3), and a waiver of defenses and appeal rights, including a waiver to file any motions
25   pursuant to 28 U.S.C. § 2255 (CR Doc. 59 at 4).

26   The plea agreement contained several paragraphs stating that Movant understood each
27   of the provisions set forth therein, that he voluntarily agreed to the plea, and that he had
28   discussed his rights with his attorney. (CR Doc. 59 at 6.) The plea agreement stated that

Movant was advised by his attorney of the nature and range of the possible sentence, and that the ultimate sentence "shall be determined by the Court after consideration of the advisory Sentencing Guidelines." (CR Doc. 59 at 6-7.) Within the plea, Movant agreed that any promises or predictions regarding a sentence that were not otherwise included in the plea agreement were null and void and would have no force or effect. (CR Doc. 59 at 7.) Movant confirmed that he was satisfied that his defense attorney had represented him in a competent manner, (CR Doc. 59 at 7), and reasserted that he fully understood the terms and conditions of the plea agreement (CR Doc. 59 at 7).

Defense counsel also signed the plea agreement and avowed as follows:

> I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement.

(CR Doc. 59 at 8.)

On October 18, 2010, United States Magistrate Judge David K. Duncan conducted a change of plea hearing. The court advised Movant, "[i]f I ever say something that you don't understand, it is very important that you let me know so that I can have an opportunity to go over it again." (CR Doc. 72 at 3.) Movant indicated that he understood the judge's statement. (CR Doc. 72 at 4.) Movant acknowledged that he read, understood, and signed the plea agreement and that he had enough time to discuss the plea agreement with his attorney. (CR Doc. 72 at 5.) Movant stated that he was "[d]efinitely" satisfied with the assistance given by his attorney. (CR Doc. 72 at 5.)

During the hearing, Movant acknowledged that he had a clear mind and understood everything that was happening in court. (CR Doc. 72 at 5.) The court reviewed the terms of the plea agreement and, on two separate occasions, discussed the maximum term of 15 years in prison. (CR Doc. 72 at 6, 7.) Movant stated that he understood the statutory

maximum penalty. (CR Doc. 72 at 8.) The court also reviewed the sentencing guidelines with Movant and reviewed the sentencing chart. (CR Doc. 72 at 9, 10-12.) Movant confirmed that he understood how sentencing works in federal court and indicated that he had no questions for the judge about sentencing. (CR Doc. 72 at 12.)

The court reviewed the stipulations of the plea agreement regarding the prison term:

> And they provide in Paragraph 3(a)(1) for you to be sentenced to a term of no less than three years imprisonment. So if you decide to plead guilty and Judge Wake accepts this plea agreement, you know that he must impose a sentence which is at least three years in length. ... There's also an explicit statement that there are no agreements as to whether sentencing guideline 2A3.1, the proper inference to criminal sexual abuse, will apply in this case.

(CR Doc. 72 at 12.)

Movant indicated that he understood the mandatory minimum term of three years and understood how the cross-reference might apply. (CR Doc. 72 at 12-13.) The court also instructed Movant that no one could tell Movant exactly what his sentence would be and that Judge Wake would make that decision. (CR Doc. 72 at 13-14.) Judge Duncan then restated the terms of the plea agreement regarding the prison term:

> The only thing you can know for sure is that [your sentence] will be at least three years in length. But what your sentence could be beyond that is something that is not known today, because Judge Wake will be making that decision and he hasn't made it yet.

(CR Doc. 72 at 14.)

Movant indicated that he understood the terms of the plea agreement regarding a prison term and he advised Judge Duncan that he did not have any questions regarding sentencing. (CR Doc. 72 at 14.) Movant was further advised of and agreed to give up all of his constitutional rights. (CR Doc. 72 at 15-17.) Movant was reminded of the fact that he was waiving his rights to appeal or collaterally attack his sentence as long as it was consistent with the terms of his plea agreement. (CR Doc. 72 at 17-18.) Movant understood this waiver and agreed to give up his appeal rights. (CR Doc. 72 at 18.) Near the end of the plea proceeding, Movant indicated that he understood the entire plea conversation with the court and had no questions about the plea agreement or plea hearing. (CR Doc. 72 at 20.)

1    On January 3, 2011, a presentence report ("PSR") was submitted. (CV Doc. 10 at 6.)

2    The guideline offense level computations were detailed in several paragraphs, culminating

3    in an adjusted offense level of 33 – which included a four-level enhancement for use of force.

4    (CV Doc. 10 at p. 6-7.)  The PSR set forth a guideline range of 135-168 months in prison,

5    a recommended a prison term of 135 months, and expressed the probation officer's

6    justification for his 135-month recommendation.  (CV Doc. 10 at 7.)

7    On January 27, 2011, Movant filed an objection to the PSR, arguing, among other

8    things, that the cross-reference to §2A3.1 for use of force should not apply. (CR Doc. 51.)

9    On February 24, 2011, a sentencing hearing was held before United States District

10   Court Judge Neil V. Wake.  (CR Docs. 60, 73.)   During the hearing, Judge Wake

11   summarized the terms of the plea agreement: "It stipulates that the sentence shall be a

12   minimum of three years in prison and there's no stipulated maximum. And there are no

13   agreements as to whether Sentencing Guideline 2A3.1, the cross reference for criminal

14   sexual abuse applies to this case." (CR Doc. 73 at 5.)  The court asked the attorneys if this

15   was an accurate statement of the plea provisions and the attorneys confirmed that it was. (CR

16   Doc. 73 at 6.)

17   During the hearing, the court asked defense counsel if he and Movant had read and

18   discussed the PSR and defense counsel advised, "[w]e have in detail, Your Honor." (CR

19   Doc. 73 at 7.)  The court then asked about objections, at which time, the parties presented

20   testimony regarding the cross-reference.  (CR Doc. 73 at 7-50.)

21   Movant testified and admitted to having sexual intercourse with the victim, but denied

22   that the intercourse was with force or without consent. (CR Doc. 73 at 9-24.)  The victim

23   then testified that Movant used force stating that she struggled and kicked him. (CR Doc.

24   73 at 27-45.)

25   The court discussed the significance of the cross-reference stating, in pertinent part:

26   And this enhancement multiplies the advisory sentencing guideline range. It
     doesn't have the necessary effect of multiplying the sentence. But it has such

27   a dramatic effect on the advisory sentencing guideline range that it is a great
     responsibility to me to make this decision.

28

Case 3:11-cv-08178-NVW   Document 14   Filed 06/06/12   Page 6 of 11


1   (CR Doc. 73 at 57.)

2       The court also noted:

3       The plea agreement, however, specifically notes this issue. And therefore,
        there is nothing in the way of unfair surprise to the defendant in having a judge
4       rather than a jury decide this ... . There was no unfair surprise. The defendant
        entered into this plea agreement, pleaded guilty, leaving this matter open for
5       me to decide and it is my responsibility to do so.

6   (CR Doc. 73 at 57.)

7       The court then made specific findings regarding the issue of witness credibility,

8   indicating that Movant's testimony "is not persuasive, that it lacks credibility" and "I just

9   find it not worthy of belief. I do not believe it. I reject it." (CR Doc. 73 at 58, 59.) The court

10  found the victim's testimony to be "consistent and credible." (CR Doc. 73 at 58.) The court

11  then overruled Movant's objection to the use of force cross-reference. (CR Doc. 73 at 60.)

12      Movant then addressed the court and apologized for his conduct. (CR Doc. 73 at 71.)

13  Thereafter, the court heard from counsel before sentencing Movant. Defense counsel stated

14  that he understood the advisory guideline range and that Movant could be sentenced to "11,

15  12, 13 years." (CR Doc. 73 at 73.) Counsel asked for leniency for his client. (CR Doc. 73

16  at 73-74.) The Government then argued to the court and recommended a sentence of 135

17  months in prison. (CR Doc. 73 at 79, 81.)

18      Having considered the advisory sentencing guideline range as well as the 18 U.S.C.

19  §3553 factors, the court found that the advisory sentencing guidelines provided an

20  appropriate benchmark and sentenced Movant to 135 months in prison. (CR Doc. 73 at 86,

21  90.) After imposing the sentence, the court asked Movant if he understood the sentence.

22  (CR Doc. 73 at 95.) Movant stated, "[y]es, Your Honor." (CR Doc. 73 at 95.) The parties

23  confirmed, and the court agreed, that the sentence complied with the terms of the plea

24  agreement. (CR Doc. 73 at 95.) Despite the appeal waiver, the court advised Movant that

25  if he wanted to appeal his sentence, that he must file a notice of appeal within 14 days of

26  sentencing. (CR Doc. 73 at 95.)

27                              **DISCUSSION**

28

1    In Ground Four, Movant claims that his trial counsel was ineffective in violation of
2    the Sixth Amendment because counsel failed to advise him as to the length of the sentence
3    he could receive and failed to file a direct appeal.

4    The two-prong test for establishing ineffective assistance of counsel was set forth by
5    the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on an
6    ineffective assistance claim, a convicted defendant must show (1) that counsel's
7    representation fell below an objective standard of reasonableness, and (2) that there is a
8    reasonable probability that, but for counsel's unprofessional errors, the result of the
9    proceeding would have been different.  See id. at 687-88.  There is a strong presumption that
10   counsel's conduct falls within the wide range of reasonable assistance.  See id. at 689-90.
11   The two-prong test set forth in Strickland also applies to challenges to guilty pleas based on
12   ineffective assistance of counsel.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  A defendant
13   who pleads guilty based on the advice of counsel may attack the voluntary and intelligent
14   character of the guilty plea by showing that the advice he received from counsel fell below
15   the level of competence demanded of attorneys in criminal cases.  See id. at 56.  To satisfy
16   the second prong of the Strickland test, "the defendant must show that there is a reasonable
17   probability that, but for counsel's errors, he would not have pleaded guilty and would have
18   insisted on going to trial."  Id. at 59.

19   **A.     Failure to Advise Defendant Regarding Possible Sentence**

20   Movant alleges that defense counsel was ineffective in failing to properly advise him
21   that he could receive more than three years in prison.  The Court, however, fails to find
22   deficient performance.  There is no evidence that Movant's counsel did not properly advise
23   him of the possible sentence under the plea agreement and the record, in fact, demonstrates
24   that Movant knew of the potential sentence.

25   Specifically, when defense counsel signed the plea agreement, he avowed that he
26   reviewed the plea agreement and sentencing consequences with Movant. (CR Doc. 59 at 8.)
27   Movant also signed the plea agreement, which clearly set forth the penalties in this case,
28   including a possible sentence of up to 15 years and a minimum sentence of 3 years, and that

the cross-reference could apply. (CR Doc. 59 at 1-2.) The plea agreement indicated that Movant was advised by his attorney of the nature and range of the possible sentence and that the ultimate sentence "shall be determined by the Court after consideration of the advisory Sentencing Guidelines." (CR Doc. 59 at 6-7.) Movant agreed that any promises or predictions regarding a sentence that were not otherwise included in the plea agreement were null and void and would have no force or effect, confirmed that he was satisfied that his defense attorney had represented him in a competent manner, and indicated that he fully understood the terms and conditions of the plea agreement. (CR Doc. 59 at 7.)

Moreover, during the plea hearing, Movant agreed that if he did not understand anything that he would advise the court. (CR Doc. 72 at 3-4.) Movant indicated that he read, understood, and signed the plea agreement; that he had enough time to discuss the plea agreement with his attorney; and that he was "[d]efinitely" satisfied with the assistance given by his attorney. (CR Doc. 72 at 4-5.) Movant acknowledged that he had a clear mind and understood everything that was happening in court. (CR Doc. 72 at 5.) The court reviewed the terms of the plea agreement and, on two different occasions, discussed the maximum term of 15 years. (CR Doc. 72 at 6, 7.) Movant confirmed that he understood the statutory maximum penalty. (CR Doc. 72 at 8.) The court also reviewed the sentencing guidelines with Movant and reviewed the sentencing chart. (CR Doc. 72 at 9, 10-12.) Movant stated that he understood how sentencing works in federal court and he had no questions for the judge about sentencing. (CR Doc. 72 at 12.)

At sentencing, Judge Wake summarized the terms of the plea agreement, including the minimum of three years in prison, no stipulated maximum, and no agreements regarding the cross-reference for use of force. (CR Doc. 73 at 5.) Movant acknowledged that he had read and discussed the PSR and defense counsel advised, "[w]e have in detail, Your Honor." (CR Doc. 73 at 7.) The court then asked about objections, at which time, the parties presented testimony regarding the use of force cross-reference. (CR Doc. 73 at 7-50.) The court conducted a detailed discussion regarding the implications of the cross-reference and noted that whatever the sentence, it would be no surprise to Movant. (CR Doc. 73 at 57.)

1    At sentencing, Movant addressed the court and apologized for his conduct. (CR Doc.

2  73 at 71.)  At no time during Movant's allocution or at any time during the sentencing

3  hearing did Movant indicate that he thought his sentence would be no more than three years.

4  And, at no time during the sentencing hearing did Movant express any confusion as to the

5  arguments regarding the cross-reference or the recommendation of 135 months in prison.

6  Indeed, the prison term of 135 months was discussed several times during sentencing and

7  Movant said nothing about that potential sentence.  (CR Doc. 73 at 73, 79, 81, 86, 90.)

8    After imposing the sentence of 135 months, the court asked Movant if he understood

9  the sentence.  (CR Doc. 73 at 95.)  Movant confirmed that he did understand the sentence,

10  and the parties indicated, and the court agreed, that the sentence complied with the terms of

11  the plea agreement.  (CR Doc. 73 at 95.)

12    Assuming deficient performance, however, Movant still cannot show that but for

13  counsel's error, he would have rejected the plea agreement and insisted instead on going to

14  trial.  When facing several counts and a harsh sentence, it is "improbable" that a defendant

15  would have refused the plea agreement.  See United States v. Freeny, 841 F.2d 1000, 1002

16  (9th Cir. 1988).  In the case at bar, the DNA evidence showed that Movant was the father of

17  the victim's child.  And, as noted by Judge Wake, the victim's story regarding use of force

18  was credible and Movant was not credible, and thus, a jury would have likely found Movant

19  guilty of a much more serious charge – Aggravated Sexual Abuse, which would have carried

20  a mandatory 30-year sentence.  See 18 U.S.C. § 2241(c).  Movant, thus, cannot show that but

21  for counsel's errors, that he would have rejected a plea.

22  **B.    Failure to File Notice of Appeal**

23    Movant's second argument – that defense counsel failed to file a notice of appeal and,

24  thus, was ineffective – is likewise unavailing.  Movant has failed to show that he requested

25  his attorney to file an appeal, that any valid legal basis for an appeal existed, or that he would

26  have prevailed on appeal.

27    As previously noted, Movant executed a knowing and voluntary appeal waiver.  He

28  understood the terms of his plea agreement and the possible sentencing consequences.  At

sentencing, Movant told the court that he understood the imposition of the 135-month sentence, and failed to asked any questions about the sentence.  There is no evidence that Movant requested that an appeal be filed and, therefore, there is no evidence that defense counsel was deficient.  Further, even if Movant had requested that an appeal be filed, there is no evidence that an appeal would have been successful.  Indeed, the evidence is to the contrary – that the appeal would have been dismissed due to a valid plea agreement waiver and that the sentence imposed was consistent with the terms of the plea agreement. Accordingly, Movant cannot demonstrate that he suffered any prejudice.

## CONCLUSION

Having determined that Movant has failed to satisfy either prong of the Strickland standard with respect to the claims asserted in Ground Four of his Motion, the Court will recommend that Movant's Motion to Vacate, Set Aside, or Correct Sentence be denied and dismissed with prejudice.[1]

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 1; CR Doc. 65) be **DENIED and DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that Movant's request for leave to amend his Motion to add a claim attacking his conviction and sentence stating that the indictment was missing an essential element (CV Doc. 11) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

---

[1] Within his reply to the Government's Response to his Motion to Vacate, Movant seeks leave to amend his Motion to add a claim attacking his conviction and sentence stating that the indictment was missing an essential element.  The Court will recommend that Movant's request for leave to amend be denied as Movant's additional claim fails to pertain to the voluntariness of his waiver.

1  This recommendation is not an order that is immediately appealable to the Ninth
2  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
3  Appellate Procedure, should not be filed until entry of the district court's judgment.  The
4  parties shall have fourteen days from the date of service of a copy of this recommendation
5  within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);
6  Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen
7  days within which to file a response to the objections.  Failure timely to file objections to the
8  Magistrate Judge's Report and Recommendation may result in the acceptance of the Report
9  and Recommendation by the district court without further review.  See United States v.
10  Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any
11  factual determinations of the Magistrate Judge will be considered a waiver of a party's right
12  to appellate review of the findings of fact in an order or judgment entered pursuant to the
13  Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.
14  DATED this 6th day of June, 2012.

15
16
17
Michelle H. Burns
United States Magistrate Judge
18
19
20
21
22
23
24
25
26
27
28